## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SHANNON WALLER, JR.,     )
                              )
      Plaintiff,            )
                              )      Civil Action File No.

v.                               )
                              )      1:23-cv-02373-SEG

BOARD OF REGENTS OF THE      )
UNIVERSITY SYSTEM OF        )
GEORGIA; TERI MILLER;         )
JASMINE BROWN; SHANOYA     )
CORDEW; MARINA SPEARS; VICTOR )
HALL; MORGAN MIDDLEBROOKS;   )
CHRISTOPHER BLAKE; CHRISTOPHER )
MCGRAW; RODRIGO MORALES;    )
TONY WANN; NANYAMKA SALLEY;   )
CYNTHIA ROGERS; PATRICIA BYRNE )
(a/k/a PATTY BERGERON BURNS);    )
HOUSTON HEALTHCARE SYSTEM,   )
INC., and HOUSTON HOSPITALS, INC., )
                              )
      Defendants.         )

## AMENDED COMPLAINT

COMES NOW the Plaintiff SHANNON WALLER, JR. (hereafter "Plaintiff"), and files this his *Amended Complaint* against the Defendants. Accordingly, Plaintiff shows the Court as follows:

## PARTIES

### 1.

Plaintiff is an individual and a resident of Jones County, Georgia, and was a respiratory therapy student at Middle Georgia State University ("MGA"), an institution of the Defendant BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA ("USG").

### 2.

Defendant USG d/b/a MGA is a public university in the University System of Georgia.

### 3.

MGA is a part of Defendant USG and is not a separate legal entity.

### 4.

Defendants HOUSTON HEALTHCARE SYSTEM, INC. ("HOUSTON HEALTHCARE") and HOUSTON HOSPITALS, INC. are corporations which receive federal financial assistance for their programs and provide services to the public.

### 5.

Defendant TERI MILLER was an agent of Defendant USG and was the Chair of the respiratory therapy program at MGA, during the relevant time period.

6.

Defendant JASMINE BROWN was an agent of Defendant USG and was Plaintiff's professor of the clinical externship (RESP 4125) at MGA, during the relevant time period.

7.

Defendant SHANOYA CORDEW was an agent of Defendant USG, and was the Student Conduct Coordinator at MGA, during the relevant time period.

8.

Defendants MARINA SPEARS, VICTOR HALL, and MORGAN MIDDLEBROOKS were agents of Defendant USG and were hearing panel members for Plaintiff's disciplinary tribunal hearing at MGA.

9.

Defendant CHRISTOPHER BLAKE was an agent of Defendant USG, and was the president of MGA, during the relevant time period, and denied relief to Plaintiff sought in an appeal.

10.

Defendant CHRISTOPHER H. MCGRAW was an agent of Defendant USG and was the Vice Chancellor of Legal Affairs of Defendant USG, during the relevant time period, and denied relief Plaintiff sought in an appeal.

11.

Defendant RODRIGO MORALES, M.D., was a physician and respiratory care professional and an agent of HOUSTON HEALTHCARE and HOUSTON HOSPITALS where Plaintiff underwent his clinical externship for RESP 4125.

12.

Defendant TONY WANN was the Supervisor of Respiratory Care at HOUSTON HEALTHCARE and HOUSTON HOSPITALS where Plaintiff underwent his clinical externship for RESP 4125.

13.

Defendant NANYAMKA SALLEY was an employee at HOUSTON HEALTHCARE and HOUSTON HOSPITALS where Plaintiff underwent his clinical externship for RESP 4125.

14.

Defendant CYNTHIA ROGERS was Supervisor of Respiratory Therapy at HOUSTON HEALTHCARE and HOUSTON HOSPITALS where Plaintiff underwent his clinical externship for RESP 4125.

15.

Defendant PATRICIA BYRNE was an upper level administrative employee at HOUSTON HEALTHCARE and HOUSTON HOSPITALS where Plaintiff underwent his clinical externship for RESP 4125. Defendant PATRICIA BYRNE's appears to have a spelling error. The correct name of this Defendant appears to be "Patricia Burns," "Patty Burns," "Patricia Bergeron Burns," or "Patty Bergeron Burns."

## JURISDICTION & VENUE

16.

The original *Complaint* was filed on April 26, 2023, in the Superior Court of Fulton County, Georgia, under Civil Action File Number 2023CV379367. Jurisdiction and venue were proper in the Superior Court of Fulton County, Georgia. O.C.G.A. §§ 9-10-31(b), 50-21-1(b).

17.

Jurisdiction and venue were proper in the Superior Court of Fulton County, Georgia. O.C.G.A. §§ 9-10-31(b), 50-21-1(b).

18.

On May 26, 2023, Defendants USG, MILLER, BROWN, CORDEW, SPEARS, HALL, MIDDLEBROOKS, BLAKE, and MCGRAW removed the action to the United States District Court for the Northern District of Georgia Atlanta Division under Civil Action File Number 1:23-cv-02373-SEG.

FACTS

19.

On August 12, 2020, Plaintiff began the respiratory therapy program with Defendant USG at MGA.

20.

On or about February 11, 2021, Alexis Pope, a clinical instructor and agent of USG and MGA, communicated to Defendant MILLER Pope's opinion that Plaintiff "display[ed] a sort of nervous anxiety" among other behavior which Pope deemed notable.

21.

On or about February 2, 2022, Alexis Pope, communicated to Defendants MILLER and BROWN Pope's opinion that Plaintiff made "some inappropriate statements during his clinical rotations that is making the staff uncomfortable."

22.

Alexis Pope's opinion of Plaintiff did not result in any academic or disciplinary infraction or record for Plaintiff at MGA or USG.

23.

From February 2021 through November 2021, Defendants MILLER and BROWN continued to discuss their feelings related to Plaintiff's anxiety and depression, including Plaintiff's use of a counselor.

24.

Defendants MILLER and BROWN were aware that Plaintiff suffered from Attention Deficit Disorder (ADD), anxiety, and depression, and that Plaintiff used a counselor and medication for these conditions.

25.

From February 2021 through November 2021, Defendants MILLER and BROWN continued to discuss their feelings about the Plaintiff's ADD, anxiety, and depression with Dr. Michael Stewart (MGA's Associate Vice President for Student Affairs at the time) and Dr. Tara Underwood (MGA's Dean of the School of Health and Natural Sciences).

26.

On November 1, 2021, Dr. Michael Stewart required Plaintiff to provide "Documentation from . . . . [a] licensed psychiatrist or psychologist, on letterhead, certifying that [Plaintiff is] not a danger to [him]self or others and that [Plaintiff is] able to withstand the stress of participation in a collegiate environment and clinical setting related to [Plaintiff's] field of study, including the care of neonatal, pediatric and adult critical care patients."

27.

On November 2, 2021, Plaintiff complied with Stewart's request.

28.

Defendants documented zero academic or conduct consequences for Plaintiff as a result of the foregoing facts from February through November 2021.

29.

Plaintiff achieved a record of satisfactory academic achievement and satisfactory student conduct until the alleged events of April 2022, which led to his removal from MGA.

30.

Plaintiff was four (4) clinical days short of graduating with a degree from the respiratory program at MGA when Plaintiff was revoked from the program on April 29, 2022.

31.

If Plaintiff could complete RESP 4125, Plaintiff would be fully eligible for graduation with a respiratory therapy degree from MGA, as well as state licensing as a respiratory therapist.

32.

On or about April 21, 2022, Plaintiff blew the whistle regarding the failure to use the appropriately sized cannula on a patient at HOUSTON HEALTHCARE and HOUSTON HOSPITALS during his clinical rotation.

33.

This patient "coded" twice, i.e. went in to cardiac arrest, which endangered said patient's life and caused injury to her body.

34.

These "codes" or cardiac arrests were caused, in part, by the inappropriately sized cannula.

35.

Defendants MORALES, WANN, and SALLEY were aware that Plaintiff suffered from Attention Deficit Disorder (ADD), anxiety, and depression, and that Plaintiff used a counselor and medication for these conditions.

36.

Defendants MORALES, WANN, and SALLEY perceived that Plaintiff was unsatisfactory in his performance at HOUSTON HEALTHCARE and HOUSTON HOSPITALS due to their opinions related to Plaintiff's ADD, anxiety, and depression.

37.

Defendants MORALES, WANN, and SALLEY communicated their perceptions and opinions of the Plaintiff's ADD, anxiety, and depression to each other and to Defendants USG, HOUSTON HEALTHCARE, HOUSTON HOSPITALS, MILLER, BROWN, ROGERS, and BYRNE.

38.

Defendants MORALES, WANN, and SALLEY communicated that Plaintiff endangered patients and failed to follow rules to each other and to Defendants USG, HOUSTON HEALTHCARE, MILLER, BROWN, ROGERS, and BYRNE.

39.

Defendants MORALES, WANN, SALLEY, MILLER, BROWN, ROGERS, and BYRNE perceived that Plaintiff was unable to perform.

40.

Defendants MORALES, WANN, SALLEY, MILLER, BROWN, ROGERS, and BYRNE'S perceptions, opinions, and communications about the Plaintiff were false and unsupported by evidence.

41.

Defendants MORALES, WANN, SALLEY, MILLER, BROWN, ROGERS, and BYRNE's perceptions, opinions, and communications about the Plaintiff were passed on to Defendants USG, HOUSTON HEALTHCARE, HOUSTON HOSPITALS, MILLER, BROWN, CORDEW, SPEARS, HALL, MIDDLEBROOKS, BLAKE, and MCGRAW.

42.

The complaints of Defendants MORALES, WANN, SALLEY, MILLER, BROWN, ROGERS, and BYRNE led to the Plaintiff being removed from HOUSTON HEALTHCARE and HOUSTON HOSPITALS, which eventually led to Plaintiff being removed as a student at MGA.

43.

On April 29, 2022, Defendant MILLER emailed and suspended him indefinitely from his clinical rotation at HOUSTON HEALTHCARE and HOUSTON HOSPITALS.

44.

On or about May 4, 2022, Defendant ROGERS and HOUSTON HEALTHCARE officially barred Plaintiff from HOUSTON HEALTHCARE and HOUSTON HOSPITALS, and communicated this to Defendant MILLER in writing.

45.

Defendant MILLER selected for Plaintiff to complete his clinical externship portion of RESP 4125 at HOUSTON HEALTHCARE and HOUSTON HOSPITALS in Warner Robins, Georgia.

46.

Defendants USG, MILLER, BROWN, BLAKE, and MCGRAW, had other options besides HOUSTON HEALTHCARE and HOUSTON HOSPITALS for Plaintiff to complete his clinical rotation component under RESP 4125.

47.

On May 9, 2022, Defendant CORDEW emailed Plaintiff a letter regarding alleged violations of the MGA Student Code of Conduct which allegedly occurred on April 22, 2022.

48.

On May 10, 2022, Defendant CORDEW emailed Plaintiff a letter which attached several documents which Plaintiff has requested from CORDEW, stating that the attachments were a part of the allegations pending against him.

49.

On May 10, 2022, Defendant CORDEW emailed Plaintiff a letter to follow-up previous correspondence from CORDEW realleging violations of the Student Code of Conduct for conduct which allegedly occurred on April 22, 2022.

50.

At various time before the hearing, Plaintiff attempted to obtain a complete collection of the evidence against him, lists of witnesses, investigative reports, notes, and summaries, from Defendants USG, MILLER, BROWN, CORDEW, BLAKE, and MCGRAW but was unable to do so.

51.

On June 1, 2022, Defendant CORDEW conducted a hearing regarding the allegations against Plaintiff.

52.

Defendants MILLER and BROWN served as the complainants at the hearing.

53.

Defendants USG, MILLER, BROWN, BLAKE, MCGRAW, and CORDEW failed to adequately investigate the allegations and complaints against the Plaintiff.

54.

At the hearing, Plaintiff submitted to Defendant CORDEW specific questions he wanted asked of the complainants.

55.

Defendant CORDEW did not ask these questions of the complainants.

56.

Defendant CORDEW submitted additional evidence on the date of the hearing.

## 57.

Defendants SPEARS, HALL, and MIDDLEBROOKS rendered a decision that Plaintiff was responsible for some of the allegations made against him.

## 58.

Defendants SPEARS, HALL, and MIDDLEBROOKS rendered a decision that Plaintiff should receive a grade of "F" in RESP 4125.

## 59.

On June 6, 2022, Defendant CORDEW emailed Plaintiff the decision of the panel from the hearing.

## 60.

This decision was that Plaintiff was found responsible for some of the allegations of the complainants and that as a result Plaintiff would receive and F in RESP 4125.

## 61.

On June 7, 2022, Defendant CORDEW emailed Plaintiff a corrected version of the June 6, 2022, correcting a typo in the number of the class.

## 62.

On June 21, 2022, Plaintiff timely appealed the decision of the panel to Defendant CORDEW.

63.

On June 27, 2022, Defendant CORDEW affirmed the decision of the hearing panel.

64.

On July 6, Plaintiff timely appealed the decision of the panel to Defendant BLAKE.

65.

On July 14, 2022, Defendant BLAKE affirmed the decision of the hearing panel.

66.

On August 1, 2022, Plaintiff timely filed an application for discretionary review to Defendant MCGRAW.

67.

On September 15, 2022, Defendant MCGRAW affirmed the decision of the hearing panel.

68.

The MGA Policy Manual/Student Code of Conduct mandates that Defendants USG, MILLER, BROWN, CORDEW, MORGAN, HALL, MIDDLEBROOKS, BLAKE, and MCGRAW follow strict procedural steps

complaints made against students. MGA Policy Manual § 4.1.5.3 – Student Conduct Procedures & Student Rights. (This will hereafter be referred to as the "Student Code of Conduct.")

69.

The Student Code of Conduct requires that "the institution shall review the complaint to determine whether the allegation(s) describes conduct in violation of the institution's policies and/or code of conduct."

70.

The Student Code of Conduct requires that "If the reported conduct would not be a violation of the institution's policies and/or code of conduct then the report should be dismissed."

71.

The Student Code of Conduct requires a "prompt, thorough, and impartial investigation and review shall be conducted in to each complaint received to determine whether charges against a student should be brought."

72.

The Student Code of Conduct requires that the "Complaint of the alleged violations shall be submitted in writing to the Office of Student Affairs" for further review by the "Student Conduct Officer or Student Conduct Investigator."

73.

The Student Code of Conduct requires, in cases of non-academic infractions . . ., [a] preliminary conference [where the student will have a]n opportunity to review charges, evidence and proposed sanction, to respond to the charges and to select from Adjudication Options."

74.

Where suspension or expulsion is involved, the Student Code of Conduct requires "written notice . . . of the identity of any investigator(s) involved."

75.

Where suspension or expulsion is involved, the Student Code of Conduct requires that "the investigation shall consist of interviews of the charged student, any alleged victims (where applicable) and witnesses, and the collection and review of documents or other physical or electronic information, as well as other steps as appropriate." In doing so, "The investigator shall also keep a record of any proffered witnesses not interviewed, along with a brief, written explanation."

76.

Where suspension or expulsion is involved, the Student Code of Conduct requires that "The investigations shall be summarized in writing in an initial investigation report and provided to the charged student . . . ." "This summary

should clearly indicate any resulting charges . . . as well as the facts and evidence in support thereof, witness statement, and possible sanctions."

77.

Where suspension or expulsion is involved, the Student Code of Conduct requires that "A copy of the final investigative report will be provided to charged student . . . before any hearing . . . [and] to the Student Conduct Board panel or hearing officer during the hearing."

78.

Where suspension or expulsion is involved, the Student Code of Conduct requires that "The investigator may testify as a witness regarding the investigation and findings, but shall otherwise have no part in the hearing process and shall not attempt to otherwise influence the proceedings outside of providing testimony during the hearing."

79.

Where academic misconduct is involved, the Student Code of Conduct requires the instructor to "be the first to attempt to adjudicate the case by presenting evidence (Student Infraction Form and all supporting documents) to the student.

80.

The Student Code of Conduct requires "due process" including "[a] fair and impartial hearing," notice of "the nature of the evidence against them and names of witnesses scheduled to appear," the ability to "[s]ubmit questions for witnesses to the Student Conduct Officer . . . [which t]he Chairperson will determine if the charged student's questions are appropriate and if the charged student's questions will be posed verbally or in writing."

81.

The Student Code of Conduct requires that where a student denies responsibility that "The hearing will be scheduled within ten (10) University business days after the accused student requests it . . . ."

82.

Defendants USG, MILLER, BROWN, CORDEW, MORGAN, HALL, MIDDLEBROOKS, BLAKE, and MCGRAW failed to follow the requirements of the Student Code of Conduct.

83.

MGA's *Academic Conduct Procedures* is in place to guarantee that "the due process rights of all students are protected."

84.

The *Academic Conduct Procedures* require that that very specific information be reported to the Office of Student Conduct via the Academic Infraction Reporting Form including the dates, times, locations, and nature of the alleged conduct, among other details.

85.

MGA's *Academic Conduct Procedures* require that the "student respondent will be provided an opportunity to . . . choose from adjudication options."

86.

MGA's *Academic Conduct Procedures* requires that, "If the student is found responsible for academic misconduct, the hearing body will determine an appropriate sanction . . . ."

87.

MGA's *Academic Conduct Procedures* permits the hearing body to consider a large range of sanctions including the following: "Opportunity to rewrite or re-submit assignment for a lesser grade" and a "Grade of '0' on the assignment, or portion of assignment . . . ."

88.

MGA's *Academic Conduct Procedures* permits the hearing body to "review prior student conduct history only after reaching a determination of responsibility in the current case" when determining the appropriate sanction for the student.

89.

MGA's *Academic Conduct Procedures* requires that if the hearing body imposes "A higher sanction, not limited to the grade of 'F' for the course," that the hearing body must "offer reasoning and justification for the higher sanction."

90.

Defendants USG, MILLER, BROWN, CORDEW, MORGAN, HALL, MIDDLEBROOKS, BLAKE, and MCGRAW failed to follow the requirements of the *Academic Conduct Procedures*.

91.

MGA's Syllabus for RESP 4125 for Spring 2022 provide for the sanction of "grade reduction" for an assignment, "review of material between student and the clinical instructor on first observation," and "loss of clinical hours" as possible options for punishment for failure to abide by the requirements of the clinical program.

92.

MGA's Syllabus for RESP 4125 for Spring 2022 only provides for failure from the course, removal from the clinical site, or dismissal from the program if there is "repeated failure to meet this expectation."

93.

Defendants USG, MILLER, BROWN, CORDEW, MORGAN, HALL, MIDDLEBROOKS, BLAKE, and MCGRAW failed to follow the requirements of MGA's Syllabus for RESP 4125 for Spring 2022.

## COUNT 1: BREACH OF CONTRACT

## (AGAINST DEFENDANT USG)

94.

The policies, syllabi, handbooks, and codes of conduct of Defendant USG and MGA constitute written contracts with their students.

95.

Defendant USG and MGA has waived their sovereign immunity with respect to liability for breach of written contracts.

96.

Defendant USG and MGA breached its contract with Plaintiff by failing to follow the requirements of the Student Code Conduct, the Academic Conduct Procedures, MGA's Syllabus for RESP 4125 for Spring 2022, and other written policies of MGA and USG.

97.

This breach of contract caused Plaintiff damages in an amount to be proven at trial.

## COUNT 2:  42 U.S.C. § 1983 (DUE PROCESS)

## (AGAINST DEFENDANTS MILLER, BROWN, CORDEW, BLAKE, MCGRAW, SPEARS, HALL, & MIDDLEBROOKS, IN THEIR INDIVIDUAL CAPACITIES)

98.

The Georgia Constitution and the Due process Clause of the Fourteenth Amendment guarantee that no person shall be deprived of life, liberty, or property without due process of law.

99.

Plaintiff was a student at a public university

100.

Plaintiff had a protected property interest in his education and related rights.

101.

Plaintiff was entitled to due process prior to those interests being taken away.

102.

Plaintiff was entitled to notice and an opportunity to be heard.

103.

Plaintiff was entitled to the names of the witnesses against him and an oral or written report to which each witness testifies.

104.

Plaintiff was entitled to the procedural requirements of Student Code Conduct, the Academic Conduct Procedures, and MGA's Syllabus for RESP 4125 for Spring 2022, and other written policies of MGA.

105.

Defendants failed to provide Plaintiff with these things and therefore deprived Plaintiff of his due process rights under federal and state law.

106.

In doing so, Defendants participated personally in depriving Plaintiff of his due process rights, while acting under color of state law, causing Plaintiff damages, thereby subjecting themselves to personal liability.

107.

The law is clearly established and Defendants had fair warning that Plaintiff was entitled to these procedural protections.

108.

Denial of due process to Plaintiff constitutes an irreparable injury per se, and Plaintiff is entitled to declaratory and injunctive relief, and damages to be determined by a jury.

## COUNT 3: REHABILITATION ACT

### (AGAINST DEFENDANTS USG; HOUSTON HEALTHCARE; HOUSTON HOSPITALS; & MILLER, BROWN, CORDEW, SPEARS, HALL MIDDLEBROOKS, BLAKE, MCGRAW, IN THEIR OFFICIAL CAPACITIES)

109.

Defendants USG is an instrumentality of the state and a public entity.

110.

Defendants MILLER, BROWN, CORDEW, SPEARS, HALL, MIDDLEBROOKS, BLAKE, and MCGRAW are public entities and instrumentalities of the state in their official capacities.

111.

Defendant HOUSTON HEALTHCARE and HOUSTON HOSPITALS are corporations which receive Federal financial assistance for their programs, and thus constitute a public entities under the Section 504 of the Rehabilitation Act.

112.

Defendants were aware that Plaintiff suffered from Attention Deficit Disorder (ADD), anxiety, and depression, and that Plaintiff used a counselor and medication for these disorders.

113.

Defendant was an otherwise qualified individual with a disability.

114.

Defendants regarded Plaintiff as having a mental or physical impairment that substantially limited one or more of Plaintiff's major life activities.

115.

Because of Defendants' regarding Plaintiff as having this impairment, Defendants denied Plaintiff the opportunity to participate in and benefit from his clinical externship and educational opportunities.

116.

Defendants' actions constituted a violation of Section 504 of the Rehabilitation Act.

117.

Plaintiff is entitled to declaratory and injunctive relief, and damages to be determined by a jury.

## COUNT 4: AMERICANS WITH DISABILITIES ACT

### (AGAINST DEFENDANTS USG; HOUSTON HEALTHCARE; HOUSTON HOSPITALS; & MILLER, BROWN, CORDEW, SPEARS, HALL MIDDLEBROOKS, BLAKE, MCGRAW, IN THEIR OFFICIAL CAPACITIES)

118.

Defendants USG is an instrumentality of the state and a public entity.

119.

Defendants MILLER, BROWN, CORDEW, SPEARS, HALL, MIDDLEBROOKS, BLAKE, and MCGRAW are public entities and instrumentalities of the state in their official capacities.

## 120.

Defendant HOUSTON HEALTHCARE and HOUSTON HOSPITALS are corporations which receive Federal financial assistance for their programs, and thus constitute public entities under the Americans With Disabilities Act.

## 121.

Defendants were aware that Plaintiff suffered from Attention Deficit Disorder (ADD), anxiety, and depression, and that Plaintiff used a counselor and medication for these disorders.

## 122.

Defendant was an otherwise qualified individual with a disability.

## 123.

Defendants regarded Plaintiff as having a mental or physical impairment that substantially limited one or more of Plaintiff's major life activities.

## 124.

Because of Defendants' regarding Plaintiff has having this impairment, Defendants denied Plaintiff the opportunity to participate in and benefit from his clinical externship and educational opportunities.

125.

Defendants' actions constituted a violation of the Americans With Disabilities Act.

126.

Plaintiff is entitled to declaratory and injunctive relief, and damages to be determined by a jury.

## COUNT 5: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

### (AGAINST DEFENDANTS MORALES, WANN, SALLEY, ROGERS & BYRNE)

127.

Plaintiff was in a contractual relationship with Defendant USG and MGA.

128.

As a part of Plaintiff's contract with Defendant USG and MGA, Plaintiff was on a clinical rotation at HOUSTON HEALTHCARE and HOUSTON HOSPITALS as a student.

129.

Defendants engaged in improper action and wrongful conduct by making improper and malicious complaints against the Plaintiff which induced a breach of the contractual obligations between Plaintiff and MGA.

130.

Defendants were strangers to these contractual relations and lacked privilege to interfere.

131.

As a direct and proximate cause of Defendants' tortious interference with the contractual relations between Plaintiff and Defendant MGA, Plaintiff suffered immense damages in amount to be proven at trial.

## CONSEQUENTIAL, SPECIAL & EMOTIONAL DAMAGES

132.

As a direct and proximate cause of Defendants' acts and omissions, Plaintiff suffered damages, including nominal, compensatory, consequential, special, and emotional damages. Plaintiff suffered loss of his higher education record, dreams and potential, loss of his career, lost pay and benefits, demotions, lost job opportunities, financial loss, and increased stress which caused Plaintiff to become ill, depressed, anxious, and sleep deprived as a result of Defendants' acts and omissions. This is not an exhaustive list of Plaintiff's damages.

133.

Special damages include Plaintiff's lost education, career, salary, benefits, reduced retirement, reduced pension, and loss of enjoyment of life.

## PUNITIVE DAMAGES

134.

The actions of Defendants show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences.

135.

Punitive damages should be awarded against Defendants in an amount sufficient to deter, penalize, and punish Defendants in light of the circumstances of this case, as provided in O.C.G.A. § 51-12-5.1.

136.

Defendants' actions were done with malice or reckless indifference to Plaintiff's federally protected rights, and therefore Defendants are liable to the Plaintiff for punitive damages in an amount to punish Defendants, or deter Defendants and others like Defendants from committing such conduct in the future. 42 U.S.C. § 1981.

## ATTORNEY'S FEES & COSTS OF LITIGATION

### 137.

Defendants acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense, therefore making Defendants liable to Plaintiff for his attorney's fees and expenses of litigation under O.C.G.A. § 13-6-11.

### 138.

Plaintiff is entitled to attorney's fees and costs of litigation under 42 U.S.C. § 1988.

### 139.

Plaintiff is entitled to attorney's fees and costs of litigation under 28 U.S.C. § 794a.

### 140.

Plaintiff is entitled to attorney's fees and costs of litigation under 42 U.S.C. § 12205.

## DECLARATORY, INJUNCTIVE & EQUITABLE RELIEF

### 141.

Defendants owe Plaintiff equitable, declaratory, and injunctive relief to rectify the damages and injuries caused by their acts and omissions, and Plaintiff specifically demands equitable relief to make Plaintiff whole.

### 142.

Specifically, Plaintiff requests reversal of the action taken against him, reinstatement, cease and desist from further disciplinary action and retaliation, back pay, front pay, lost benefits, retraction, correction of her disciplinary and personnel file, and neutral reporting to all future educators, employers, and reference inquiries.

### 143.

Plaintiff reserves the right to request such further equitable or injunctive relief which may be revealed as necessary to make Plaintiff whole, which may be revealed through discovery or at trial.

**WHEREFORE,** having fully stated her Complaint, Plaintiff prays:

a.  that a judgment be entered against Defendants, and in favor of Plaintiff, on all Counts;

b.   that Defendants be ordered to reverse all action taken against the Plaintiff and to reinstate Plaintiff;

c.   that Defendants be ordered to reverse and correct Plaintiff's educational, career, and personnel files;

d.   that Defendants be ordered to pay Plaintiff compensation, compensatory damages, tuition, lost income, front pay, back pay, lost benefits, lost retirement benefits, reasonable attorney fees, court costs, and expenses;

e.   that declaratory and equitable relief and a permanent injunction be awarded restraining Defendants from further wrongful action, discipline, and retaliation against Plaintiff;

e.   that Plaintiff be awarded consequential, nominal, compensatory, and special damages as against Defendants to compensate Plaintiff for his mental and emotional distress, anxiety, humiliation, loss of professional and personal reputation, income, benefits, and opportunities, as consequences of the Defendants' various unlawful and tortious conduct, including loss of enjoyment of life, in an amount to be determined by the enlightened conscience of a jury;

h.     that Plaintiff have a judgment entered in his favor and against Defendants, for all his damages allowed under law;

i.     that Plaintiff recover punitive damages against Defendants in an amount to be determined by the enlightened conscience of a jury, an amount to deter Defendants and others from similar conduct;

k.     that Plaintiff recover his attorney's fees, costs, and expenses of litigation as permissible under law;

l.     that Defendants be ordered to render specific performance equitable relief to Plaintiff as stated in the Complaint;

m.     that Plaintiff be granted a trial by jury on all issues so triable;

n.     that all costs of the action be cast upon Defendants;

o.     that Defendants be ordered to pay pre-judgment and post-judgment interest according to law; and

p.     that this Court order such other, further, and different relief as this Court deems just and proper.

Respectfully submitted this 13th day of June, 2023.

LAWSON, BECK & SANDLIN, LLC

Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone: (770) 486-8949
Facsimile: (770) 486-8950
Email: holly@lawsonandbeck.com

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SHANNON WALLER, JR.,

    Plaintiff,

v.

BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF
GEORGIA; TERI MILLER;
JASMINE BROWN; SHANOYA
CORDEW; MARINA SPEARS; VICTOR
HALL; MORGAN MIDDLEBROOKS;
CHRISTOPHER BLAKE; CHRISTOPHER
MCGRAW; RODRIGO MORALES;
TONY WANN; NANYAMKA SALLEY;
CYNTHIA ROGERS; PATRICIA BYRNE
(a/k/a PATTY BERGERON BURNS);
HOUSTON HEALTHCARE SYSTEM,
INC., and HOUSTON HOSPITALS, INC.,

    Defendants.

Civil Action File No.

1:23-cv-02373-SEG

## **VERIFICATION**

Personally appeared SHANNON WALLER, JR., who, after being duly sworn, states that the facts alleged in the foregoing *Amended Complaint,* which is to be filed in the matter of *Shannon Waller, Jr. v. Board of Regents of the University System of Georgia et al,* are true and correct to the best of his knowledge, belief, and information.

_Shannon Waller, Jr._
SHANNON WALLER, JR., Plaintiff

Sworn to and subscribed before me this
13 day of June, 2023.

_Melissa K. Tanner_
Notary Public
My commission expires: 7·5·2025



# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

SHANNON WALLER, JR.,          )
                             )
    Plaintiff,          )
                             )          Civil Action File No.
v.                           )
                             )          1:23-cv-02373-SEG
BOARD OF REGENTS OF THE      )
UNIVERSITY SYSTEM OF         )
GEORGIA; TERI MILLER;        )
JASMINE BROWN; SHANOYA       )
CORDEW; MARINA SPEARS; VICTOR )
HALL; MORGAN MIDDLEBROOKS;   )
CHRISTOPHER BLAKE; CHRISTOPHER )
MCGRAW; RODRIGO MORALES;     )
TONY WANN; NANYAMKA SALLEY;  )
CYNTHIA ROGERS; PATRICIA BYRNE )
(a/k/a PATTY BERGERON BURNS);  )
HOUSTON HEALTHCARE SYSTEM,   )
INC., and HOUSTON HOSPITALS, INC.,  )
                             )
    Defendants.          )

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of June, 2023, I certify that I served a copy of the foregoing *Amended Complaint* on opposing counsel by e-filing the same through the United States District Court for the Northern District of Georgia online e-filing system, which will automatically serve a copy of the same to counsel of record.

Respectfully submitted this 14th day of June, 2023.

LAWSON, BECK & SANDLIN, LLC
/s/ Holly H. Maestas
Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone: (770) 486-8949
Facsimile: (770) 486-8950
Email: holly@lawsonandbeck.com