**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **SHANNON WALLER, JR.,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:23-cv-232 (MTT)** |
| ) | |
| **BOARD OF REGENTS OF THE** ) | |
| **UNIVERSITY SYSTEM OF** ) | |
| **GEORGIA,** *et al.,* ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## ORDER

Plaintiff Shannon Waller, Jr. claims he was improperly "removed" from the respiratory therapy program at Middle Georgia State University ("MGSU"), a unit of the University System of Georgia ("USG"). Doc. 37 ¶¶ 1, 54. Relevant here, Waller's second amended complaint asserts a breach of contract claim against the Board of Regents of the University System of Georgia (the "Board"), 42 U.S.C. § 1983 procedural due process claims against various Board employees and a MGSU student in their individual capacities, and Rehabilitation Act ("RA") and Americans with Disabilities Act ("ADA") claims against those individuals in their official capacities and the Board.[1] *Id.* ¶¶ 117-181. The Board defendants now move to dismiss Waller's claims against them. Doc. 40. For the reasons below, that motion (Doc. 40) is **GRANTED**.

---

[1] The remaining defendants—Houston Healthcare System, Inc., Houston Hospitals, Inc., Tony Wann, Nanyamka Salley, Cynthia Rogers, Patricia Burns, and Rodrigo Morales, M.D.—have not moved to dismiss.

# I. BACKGROUND

## A. Factual Background

Waller's factual allegations are hard to follow.  The Court organizes those allegations by the claims, as best the Court can tell, they are intended to support.

### 1. Allegations relevant to Waller's breach of contract claim

On June 8, 2020, Waller received, signed, and returned his letter of acceptance to MGSU.  Docs. 37 ¶¶ 24-25; 37-2.  Waller began MGSU's respiratory therapy program on August 12, 2020.  Doc. 37 ¶ 26.  On August 16, Waller signed the MGSU program handbook certifying that he received a copy, that he read and understood it, and that he agreed to adhere to its policies.  Docs. 37 ¶ 27; 37-3.  The program handbook requires students to abide by MGSU's policies, including the "Student Code of Conduct," the University "Student Handbook," and other MGSU "policies and procedures."[2]  Docs. 37 ¶ 28; 37-4 at 6, 8.  On November 1, 2021, Defendant Christopher Blake, as President of MGSU, signed the Student Government Association ("SGA") Constitution; SGA involvement "requires signatories to 'uphold the [MGSU] Student Handbook and Code of Conduct.'"  Docs. 37 ¶¶ 29-30; 37-5 at 2.  Waller contends these documents formed a contract with the Board "to abide by the policies and procedures of" MGSU.  Doc. 37 ¶¶ 119, 126-128.

Waller alleges the Board "breached its contract with [him] by failing to follow the requirements of the Student Code of Conduct, the Academic Conduct Procedures,

---

[2] The Student Code of Conduct mandates "strict procedural steps for complaints made against students." Doc. 37 ¶ 89.  The Academic Conduct Procedures, for instance, require "specific information be reported to the Office of Student Conduct … including the dates, times, locations, and nature of the alleged conduct, among other details."  *Id.* ¶ 107.  A copy of each is attached to Waller's Complaint.  Docs. 37-9; 37-10.

MG[SU]'s Syllabus for RESP 4125 for Spring 2022, and other written policies of MG[SU] and USG." *Id.* ¶ 131. Waller does not expressly say in count one what procedures the Board failed to follow, nor does he say in count one when the breach occurred. It is evident, however, that the "breach" allegedly arose from a disciplinary proceeding, which is discussed below.

### 2. Allegations relevant to Waller's procedural due process claim

Here, Waller's allegations are particularly confusing. In part, this is because the allegations specifically pled are incomplete and often conflict with facts he incorporated into his second amended complaint.[3] The Court recites first the facts Waller pleads and then the relevant facts he incorporates.

### i. Facts pled

To graduate Waller apparently had to complete "RESP 4125," a course that involved a clinical externship. Doc. 37 ¶¶ 42-43, 57-58, 81-82. Waller began his clinical externship at facilities owned and operated by Houston Healthcare System, Inc. and Houston Hospitals, Inc. (except when necessary to distinguish between the two, both are hereafter referred to as "Houston Healthcare"). *Id.* ¶¶ 6, 55, 57. On April 21, 2022, Waller says he "blew the whistle regarding [Houston Healthcare's] failure to use the appropriately sized cannula on a patient" who went into cardiac arrest, "caused, in part,

---

[3] Waller moved for leave "to amend his [first] *Amended Complaint* with the new evidence and information contained in [Waller]'s Response to Defendant USG's [first] Motion to Dismiss (Doc. #18)." Doc. 27 at 4 (citing Doc. 26) (emphasis in original). That "new evidence" included an audio recording of Waller's disciplinary hearing which he had attached to and relied upon in his response to the defendants' first motion to dismiss. *See* Docs. 26; 26, Ex. 6. The Court granted Waller leave to amend. Doc. 35. Although Waller's second amended complaint references discussion at the hearing, he did not attach the audio recording to his second amended complaint. *See* Doc. 37. The Board defendants again moved to dismiss, and Waller's response again relied on the audio recording. Docs. 40; 44. The Court overruled the defendants' objection to consideration of the recording and deemed the recording to be incorporated into Waller's second amended complaint. Doc. 57.

by the inappropriately sized cannula." *Id.* ¶¶ 44-46.  On April 29, Defendant Teri Miller,

MGSU's respiratory therapy program chair, emailed Waller and "suspended him

indefinitely from his clinical rotation." *Id.* ¶¶ 7, 55.  Then, on May 4, 2022, Houston

Healthcare "officially barred" Waller from its hospital(s).  *Id.* ¶ 56.

On May 9 and May 10, 2022, Defendant Shanoya Cordew, the MGSU Student

Conduct Coordinator, sent Waller letters "regarding alleged violations of the [MGSU]

Student Code of Conduct" that allegedly occurred on April 22, 2022.  *Id.* ¶¶ 9, 59-62.

Only the May 10 letter is attached to Waller's second amended complaint.  Doc. 37-6.

The alleged violations were:

> - **Other forms of academic dishonesty – Failure to follow class or test taking policy as instructed by the faculty member and/or in the course syllabus**
>   - Disappearing from your clinical site and not responding to attempts from staff to earn your whereabouts
> - **Actions and/or behaviors that endanger health/safety**
>   - Making changes to ventilators without notifying a therapist
>   - Placing a patient on "BiPAP" not under supervision
>   - Performing an ABG backwards, despite being give previous guidance/feedback on the correct manner in which to perform this test
> - **Disruptive Behavior**
>   - Making an inappropriate comment to a resident during a code
>   - Dismissal from clinical unit due to arguing with a doctor in front of a patient's family

Docs. 37 ¶¶ 59-62; 37-6 at 1.

The letter advised Waller of the possible sanctions—an "F" in RESP 4125 and

dismissal from the respiratory therapy program.  Doc. 37-6 at 1.  Cordew also emailed

Waller documents he requested constituting some of the evidence against him.  Docs.

37 ¶ 60; 37-6 at 2.  Waller requested a hearing which Cordew convened on June 1,

2022.  Docs. 37 ¶ 64; 37-6 at 2; 37-8.  Miller and Defendant Jasmine Brown, Waller's

clinical externship professor, "served as the complainants."  Doc. 37 ¶¶ 8, 65.

Defendants Marina Spears, Victor Hall, and Morgan Middlebrooks served as members

of the hearing panel.  *Id.* ¶ 10.  Waller alleges the complainants presented evidence of events occurring before and after April 22, 2022, which was the only date listed in the "charging documents."  Docs. 37 ¶¶ 69, 76-77; 37-6.  Waller alleges that Charge 2 involved an incident that occurred on April 29, not April 22.  Doc. 37 ¶ 76.

The panel found Waller responsible only for Charge 2: "actions and/or behaviors that endanger health/safety."  Docs. 37 ¶ 72; 37-7 at 1.  As punishment, the panel determined Waller should 'receive a grade of 'F' in RESP 4125."  Doc. 37 ¶ 81.  Waller alleges this "was tantamount to his complete removal from, and ineligibility to re-enter, the respiratory therapy program."  *Id.* ¶ 82.  Waller appealed the panel decision to Cordew, who affirmed.  *Id.* ¶¶ 83-84.  Waller next appealed to MGSU President Blake, who also affirmed.  *Id.* ¶¶ 85-86.  Waller then filed a discretionary appeal to Defendant Christopher McGraw, the Board's Vice Chancellor of Legal Affairs, and he too affirmed. *Id.* ¶¶ 12, 87-88.

### ii. Facts incorporated

The audio recording of the disciplinary hearing makes clear that the charges against Waller were based on two incidents that occurred not on April 22 but on April 21, 2022 and April 29, 2022.  Doc. 26, Ex. 6 at 23:50—24:15, 25:45—26:15, 37:58—38:39.  Charges 1 and 3 related to an incident that occurred on April 21; Charge 2 related to an April 29 incident.  *Id.* at 35:49—36:58, 39:55—41:05, 47:32—48:19.  The audio recording explains the confusion over dates.  Doc. 26, Ex. 6 at 47:32—48:19. The Supervisor of Respiratory Care at Houston Healthcare, Tony Wann, apparently did not learn of the April 21 incident until the next day, and he incorrectly reported to Miller that the incident occurred on April 22.  Docs. 26, Ex. 6 at 35:49—36:58, 36:20—36:58;

37 ¶ 14.  Because of the April 21 incident, Wann decided to remove Waller from the

hospital when Waller returned for his next shift.  Doc. 26, Ex. 6 at 27:44—30:20.  Wann

communicated this to Miller before learning that Waller had already been told not to

return to the hospital by a different supervisor because of the April 29 incident.  Id. at

27:40—28:30, 29;01—30:21, 38:00—39:08, 39:55—40:30.  As Waller noted, he did not

work on April 22.  Id. at 22:13—23:25, 36:20—36:58.  Houston Healthcare investigated

the incidents and, on May 4, 2022, officially barred Waller from its facilities because of

both the April 21 and April 29 incidents.  Docs. 26, Ex. 6 at 22:09-11, 22:22—22:38,

27:00—34:00, 31:46—32:42, 33:20; 44 at 9-10.

Miller then initiated misconduct proceedings against Waller at MGSU citing the

same charges that the "hospital themselves listed as their primary concerns," i.e., the

April 21 and 29 incidents.  Doc. 26, Ex. 6 at 32:23—33:32.  Prior to sending the May 10

letter, Cordew met with Waller to review the charges.  Docs. 26, Ex. 6 at 13:39—14:35,

22:58—22:38; 37-6 at 1.  Waller received copies of emails between Miller and Houston

Healthcare employees relating to both incidents and was informed that these

documents would be entered into evidence against him at the hearing.  Doc. 26, Ex. 6

at 14:21—17:07.  As noted, the hearing panel found Waller responsible for Charge 2,

which arose from the April 29 incident.  Docs. 37 ¶ 72; 37-7 at 1; 37-8.  According to the

attachments to Waller's second amended complaint:

> The hearing panel believed they had preponderance to find [Waller]
> responsible for actions: that endanger health & safety as [Waller] signed the
> MG[SU] respiratory handbook, acknowledging that [he] was to perform
> procedures at his clinical site under the supervision of a practicing
> Respiratory Therapist.   [Waller] admitted that he did perform these
> procedures at least one time on the dates in question and further explained
> this during this testimony.

Doc. 37-8 at 1; *see also* Doc. 37-7. Again, the panel determined Waller "should receive a grade of 'F' in RESP 4125 as punishment," which Waller alleges "was tantamount to his complete removal from, and ineligibility to re-enter, the respiratory therapy program." Docs. 37 ¶¶ 81-82; 37-7 at 1.

   *3. Allegations relevant to Waller's claims of disability discrimination*

   Waller's allegations relating or possibly relating to his disability claims are disjointed and in part incomprehensible. The Court does its best to summarize them.

   In February 2021, one of Waller's clinical instructors, Alexis Pope, informed Miller that Waller "display[ed] a sort of nervous anxiety." Doc. 37 ¶ 32. Waller has attention deficit disorder ("ADD"), anxiety, and depression for which he takes medications and sees a counselor. *Id.* ¶¶ 36-37. Miller, MGSU's respiratory therapy program chair, and Brown, Waller's clinical externship professor, were aware that Waller allegedly had these conditions, took medication, and saw a counselor. *Id.* ¶¶ 7-8, 36. In February 2022, Pope told Miller and Brown that Waller "made 'some inappropriate statements during his clinical rotations making staff uncomfortable.'" *Id.* ¶ 33. "Pope's opinion of [Waller] did not result in any academic or disciplinary infraction or record for [Waller]." *Id.* ¶ 34.

   From February to November 2021, Miller and Brown discussed their "feelings" related to Waller's "anxiety and depression, including [Waller]'s use of a counselor." *Id.* ¶ 35. Miller and Brown also discussed these "feelings" with MGSU's then Associate Vice President for Student Affairs, Dr. Michael Stewart, and the Dean of MGSU's School of Health and Natural Sciences. *Id.* ¶ 37. Stewart requested certain documentation from Waller about his disabilities, which Waller provided, and the

defendants "documented zero academic or conduct infractions or consequences for [Waller] as a result." *Id.* ¶¶ 38-40.  In fact, Waller "achieved a record of satisfactory academic achievement and satisfactory student conduct until the alleged events of April 2022, which led to his removal from MG[SU]." *Id.* ¶ 41.  As noted, Waller "blew the whistle" on April 21, 2022, and Miller emailed Waller on April 29 "suspend[ing] him indefinitely from his clinical rotation." *Id.* ¶¶ 44, 55.  This, of course, relates to the incidents that led to the charges against Waller.  Although this allegation is interspersed with allegations that mention his disabilities, Waller does not allege discriminatory animus was the cause of his suspension.

Waller's clinical supervisors at Houston Healthcare were aware of Waller's conditions. *Id.* ¶ 47.  Because of his clinical supervisors' "opinions related to" these conditions, Waller alleges they "perceived that [he] was unsatisfactory in his performance"; perceptions that at some unstated time they shared with Miller and Brown. *Id.* ¶¶ 48-49, 51.  Waller follows those allegations with the allegation that certain defendants communicated to others that Waller "endangered patients and failed to follow rules." *Id.* ¶ 50.  However, Waller does not allege that this communication related to a disability.

Waller then alleges that the "*complaints* of Defendants MORALES, WANN, SALLEY, MILLER, BROWN, ROGERS, and BURNS led to [Waller] being removed from HOUSTON HEALTHCARE and HOUSTON HOSPITALS, which led to [Waller] being removed as a student at MG[SU]." *Id.* ¶ 54 (emphasis added).  Waller does not identify these "complaints," nor does he explain how they led to his removal.  In fact, Waller does not allege that he was "removed" because of his disabilities or because of

discriminatory animus.  Nor does Waller allege that he requested or was denied an accommodation.[4]

Finally, in the bodies of counts three and four, Waller alleges that all "Defendants' actions and omissions against [Waller] were taken solely on the basis of [Waller]'s disabilities and impairments."[5]  *Id.* ¶¶ 156, 175.  But Waller never gets around to alleging what action any MGSU employee took, solely or otherwise, because of "perceptions" based on Waller's alleged disabilities.  In those counts, Waller references no specific facts.

## B. Procedural History

On April 26, 2023, Waller filed this action in Fulton County Superior Court alleging claims for breach of contract, procedural due process violations, tortious interference, and discrimination under the RA and ADA.  Docs. 1; 1-1.  The defendants removed the case to federal court.  Doc. 1.  Waller then amended his complaint as of right to clarify the capacity in which the individual defendants were being sued and to correct the spelling of a named defendant.  Doc. 10.  The Court granted Waller's request for leave to file a second amended complaint, and the Board and the individuals associated with the Board have moved for the second time to dismiss Waller's claims against them.  Docs. 35; 40.

---

[4] While Waller argues in his brief, though he does not plead in his second amended complaint, that he "requested accommodations, but those were not provided to him at the time he needed them most," Waller does not elaborate any further.  Doc. 44 at 20 (citing Doc. 37 ¶ 31).  Waller does allege that MGSU acknowledged his disabilities and "rights to accommodations in his coursework and other aspects of his student life."  Doc. 37 ¶ 31.  This is an apparent reference to an attachment to a brief that concerns a granted testing accommodation.  *See* Doc. 26-9.

[5] "Defendants" includes Houston Healthcare and Houston Hospitals.  Doc. 37 ¶¶ 145-162, 163-181.

## II. STANDARD

The Federal Rules of Civil Procedure require generally that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  In this case, the defendants move to dismiss Waller's claims based on sovereign immunity pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim for which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[6]  Doc. 40-1 at 6-20.

### A.  Fed. R. Civ. P. 12(b)(1)

A motion to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) generally takes one of two forms—a facial attack or a factual attack. *Garcia v. Copenhaver, Bell & Assocs. M.D.'s*, 104 F.3d 1256, 1260-61 (11th Cir.1997). The attack here is facial.[7]  *See Morrison v. Amway Corp.*, 323 F.3d 920, 924-25 n.5 (11th Cir. 2003).  When presented with a facial attack, a court determines whether the complaint has sufficiently alleged subject-matter jurisdiction.  *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999) ("'Facial attacks' on the complaint 'require[ ]

---

[6] The terms "Eleventh Amendment immunity" and "sovereign immunity" are often used interchangeably, as the parties do here.  *See, e.g.*, Doc. 40-1 at 17.  However, the two are distinct doctrines.  *See Hufford v. Rodgers*, 912 F.2d 1338, 1340 (11th Cir. 1990) ("The question of Eleventh Amendment immunity apparently remains integrally confused with the related, but distinct, concept of state sovereign immunity.").  The Eleventh Amendment generally provides a nonconsenting state with immunity from suit brought by a private individual *in federal court*.  U.S. Const. Amend. XI; *Alden v. Maine*, 527 U.S. 706, 712-30 (1999).  Sovereign immunity, on the other hand, bars suit against a nonconsenting state, no matter the forum.  *See Hufford*, 912 F.2d at 1340-41.  By voluntarily removing this case to federal court, the Board waived its Eleventh Amendment immunity to being sued in a federal forum.  *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 614 (2002).  The Board did not, however, waive "any defense it would have enjoyed in state court—including immunity from liability for particular claims." *Stroud v. McIntosh*, 722 F.3d 1294, 1302 (11th Cir. 2013).

[7] *See* Doc. 40-1 at 1 n.1 ("For purposes of this motion, fact allegations in the amended complaint are accepted as true."); *see also McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing *Williamson v. Tucker*, 645 F.2d 413 (5th Cir. 1981)).  The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true ....'" (alteration in original)).  Just like "a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged by in the complaint as true." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009*), abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 456 (2012) (holding only a natural person is an "individual" who can be held liable under the Torture Victim Protection Act).

**B.  Fed. R. Civ. P. 12(b)(6)**

To avoid dismissal pursuant to Rule12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*,

297 F.3d 1182, 1188 (11th Cir. 2002).  The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555.  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

In general, courts ruling on Rule 12(b)(6) motions to dismiss are confined to the pleadings; if they wish to consider extrinsic evidentiary material, Rule 12(d) compels them to convert the motion into a Rule 56 motion for summary judgment and to provide the parties with a "reasonable opportunity" to present additional relevant material. Courts may, however, consider certain "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" in connection with a Rule 12(b)(6) motion.  *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322 (2007).  "Where there is conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control."  *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1206 (11th Cir. 2007) (quoting *Simmons v. Peavy-Welsh Lumber Co*., 113 F.2d 812, 813 (5th Cir. 1940)).

### III. DISCUSSION

**A.  Breach of Contract**

Waller, in count one of his second amended complaint, alleges that the Board is liable for breach of contract because it failed to follow certain requirements in the RESP 4125 syllabus, the Student Code of Conduct, the Academic Conduct Procedures, "and other written policies of MG[SU]."  Doc. 37 ¶¶ 117-132.  The Board moves to dismiss,

arguing Waller's breach of contract claim is barred by sovereign immunity.  Doc. 40-1 at 6.

The Board, as a Georgia state agency, enjoys sovereign immunity.  *See* O.C.G.A. § 20-3-36 (sovereign immunity applies to the Board of Regents); *Bd. of Regents of Univ. Sys. of Ga. v. Barnes*, 322 Ga. App. 47, 49, 743 S.E.2d 609, 611 (2013).[8]  However, Georgia has waived its sovereign immunity "as to any action ex contractu for the breach of any written contract."  GA. CONST., art. I, § II, ¶ IX(c).  Waller bears the burden of plausibly alleging the existence of a written contract sufficient to waive sovereign immunity.  *See Ga. Dep't of Lab. v. RTT Assocs.*, 299 Ga. 78, 81, 786 S.E.2d 840, 843 (2016) ("The burden of demonstrating a waiver of sovereign immunity rests upon the party asserting it.").  Waller must point to a written document or contemporaneous writings signed by both parties "demonstrat[ing] their intent to enter into a binding contract" and which state "all of the necessary terms of a contract." *Patrick v. Bd. of Regents of Univ. Sys. of Ga.*, 358 Ga. App. 546, 548, 855 S.E.2d 746, 749 (2021) (citation omitted).  Because any waiver of sovereign immunity must be strictly construed, ordinary principles of contract law establishing an implied contract are insufficient.  *Id.* at 546, 548, 855 S.E.2d at 749 (holding that admission letter referring to university handbooks and department regulations did not establish intent to create contract between student and State such that sovereign immunity was waived by written contract).

Waller relies on three documents, which he attaches to his second amended complaint, to establish a written contract with the Board: his acceptance letter, which he

---

[8] *Disapproved of on other grounds by Wolfe v. Bd. of Regents of the Univ. Sys. of Ga.*, 300 Ga. 223, 794 S.E.2d 85 (2016) (involving the availability of direct appeal for adjudicatory administrative decisions).

signed and returned in June 2020; a copy of the MGSU program handbook which he signed two months later; and the SGA Constitution, which MGSU President Blake signed in November 2021. Docs. 37 ¶¶ 24-25, 27, 29-30, 117, 119-122, 131; 37-2; 37-3; 37-4 at 6, 8; 37-5. Waller argues these three documents constitute a written contract because each references the Student Code of Conduct and Academic Conduct Procedures. *See* Doc. 44 at 4 (contending the "policies and procedures in these signed writings clearly identify" the MGSU "Student Code of Conduct" and "Academic Conduct Procedures"). Cobbling together these documents is clearly insufficient to establish a written contract waiving the Board's sovereign immunity.

First, these documents are not contemporaneous writings signed by both parties. *See Laun v. Bd. of Regents of Univ. Sys. of Ga.*, 2019 WL 4694940, at *19 (S.D. Ga. Sept. 25, 2019) (requiring at least one writing signed by both parties). Writings are contemporaneous when they are "executed at the same time *and in the course of the same transaction*." *Dabbs v. Key Equip. Fin., Inc.*, 303 Ga. App. 570, 574, 694 S.E.2d 161, 165 (2010) (citation omitted). "One thing is contemporaneous with a given transaction when it is so related in point of time as reasonably to be said to be a part of such transaction." *Laun*, 2019 WL 4694940, at *19 (quoting *Dabbs, Inc.*, 303 Ga. App. at 574, 694 S.E.2d at 165). MGSU President Blake signed the SGA Constitution more than a year after Waller signed his acceptance letter and program handbook. *See Bd. of Regents of Univ. Sys. of Ga. v. Winter*, 331 Ga. App. 528, 533, 771 S.E.2d 201, 206 (2015) ("a nine-week interval between the execution of documents strongly suggests that those documents are not contemporaneous");[9] *Newell Recycling of Atlanta v.*

---

[9] *Overruled on other grounds by Rivera v. Washington*, 298 Ga. 770, 773, 784 S.E.2d 775, 778 n.7 (2016) (involving application of collateral order doctrine).

*Jordan Jones & Goulding*, Inc., 317 Ga. App. 464, 466-67, 731 S.E.2d 361, 364 (2012) (holding documents dated three months apart are not contemporaneous). Second, even if "both parties … manifested their intent to be bound by [MGSU's] written policies and procedures," the exchange of "mutually interdependent promises" does not waive sovereign immunity absent a signed writing containing all the essential terms of a contract. Doc. 44 at 5.

Nevertheless, Waller, citing *Bd. of Regents of the Univ. Sys. of Ga. v. Doe*, 278 Ga. App. 878, 879, 881-82, 630 S.E.2d 85, 89 (2006), argues that these disparate documents form a contract sufficient to waive sovereign immunity. Doc. 44 at 5-6. There, Georgia Tech sent Doe a written offer of employment containing all the necessary terms of an employment contract including a specific salary, benefits, and start date. *Doe*, 278 Ga. App. at 881, 630 S.E.2d at 89. Georgia Tech's offer requested a "formal letter of acceptance," and Doe accepted the offer in writing within 24 days. *Id.* at 879, 630 S.E.2d at 87. Not surprisingly, the court found a valid written contract because the parties "clearly manifested their intent to be bound by their agreement." *Id.* at 881, 630 S.E.2d at 89. Those facts bear no resemblance to the facts here—those parties exchanged signed contemporaneous writings; their writings contained all necessary terms; and the parties' conduct clearly manifested their intent to bind themselves to their written agreement. In short, *Doe*, if anything, scuttles Waller's argument.

Waller does not expressly argue that his allegations plausibly allege an implied contract with the Board. But in effect that is his argument—even in the absence of a signed contemporaneous writing containing all necessary terms, the parties' course of

conduct, he argues, shows the parties somehow intended to bind themselves.  Doc. 44 at 5-6.  That, courts have consistently held, is insufficient to waive sovereign immunity.[10]

The Board's motion to dismiss Waller's breach of contract claim is **GRANTED**.

## B. Procedural Due Process

In count two of his second amended complaint, Waller alleges a Fourteenth Amendment procedural due process claim against various Board employees and a MGSU student in their individual capacities.  Doc. 37 ¶¶ 133-144.  The defendants contend qualified immunity bars Waller's claims.  Doc. 40-1 at 15-16.

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply."  *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)).  To meet this burden, a plaintiff must establish that "the officer's conduct amounted to a constitutional violation" and "the

---

[10] *See Justice v. Ga. Dep't of Pub. Safety*, 368 Ga. App. 593, 601-02, 890 S.E.2d 486, 493 (2023) (Gobeil, J., concurring specially) (collecting cases).  *See, e.g.*, *Patrick*, 358 Ga. App. at 548-49, 855 S.E.2d at 749 (holding graduate handbook, student handbook, and offer letter did not demonstrate intent for handbook to become a binding contract); *Barnes*, 322 Ga. App. at 50, 743 S.E.2d at 611-12 (holding unsigned and unauthenticated student code of conduct and counseling center consent form signed only by student did not constitute a written contract waiving sovereign immunity); *Bd. of Regents of Univ. Sys. of Ga. v. Ruff*, 315 Ga. App. 452, 456, 726 S.E.2d 451, 454-55 (2012) (holding application to study abroad program, written refund policy, and study abroad manual did not waive sovereign immunity because they were not signed by the Board), *overruled on other grounds by Rivera*, 298 Ga. at 778 n.7, 784 S.E.2d at 775; *Wilson v. Bd. of Regents of Univ. Sys. of Ga.*, 262 Ga. 413, 414, 419 S.E.2d 916, 917-18 (1992) (holding signed consent form and ambulatory surgery patient agreement did not constitute a written contract).

right violated was 'clearly established' at the time of the violation." *Lewis*, 561 F.3d at

1291.  This two-step analysis may be done in whatever order is deemed most

appropriate for the case, yet "it is 'often beneficial' to analyze them sequentially." *King*

*v. Pridmore*, 961 F.3d 1135, 1142 (11th Cir. 2020) (quoting *Plumhoff v. Rickard*, 572

U.S. 765, 774 (2014)); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

   *1.  Discretionary authority*

   "To establish that the challenged actions were within the scope of [their]

discretionary authority, [the] defendant[s] must show that those actions were (1)

undertaken pursuant to the performance of [their] duties, and (2) within the scope of

[their] authority." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018)

(quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).  Each prong

requires courts to "look to the general nature of the defendant's action, temporarily

putting aside the fact that" the conduct may have been committed for an unlawful

purpose or in an unlawful way.  *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir.

2017) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir.

2004)).

   It is not clear if Waller disputes that the defendants were acting within their

discretionary authority.  He states in conclusory fashion that "[t]he [d]efendants did not

have discretionary authority to violate the clearly established due process requirements

of the Constitution and [MGSU] policies and procedures."  Doc. 44 at 14.  Waller then

proceeds to address only whether the defendants violated a clearly established right.

*Id*. at 14-16.  To the extent Waller does dispute that the defendants acted within their

discretion, this "argument" fails.  The question is not whether it was within defendants'

authority to commit an allegedly unauthorized act. *Mikko*, 857 F.3d at 1144. This framing of the inquiry conflates the distinct "question of whether the defendants acted lawfully with the question of whether they acted within the scope of their discretion." *Sims v. Metro. Dade Cnty.*, 972 F.2d 1230, 1236 (11th Cir. 1992) ("The issues are distinct."). Defendants need only demonstrate "objective circumstances which would compel the conclusion that [their] actions were undertaken pursuant to the performance of [their] duties and within the scope of [their] authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (citation omitted). It is exceedingly rare for an official to be acting outside the scope of their discretionary authority and thus be precluded from claiming qualified immunity as a matter of law. *See*, *e.g., Est. of Cummings*, 906 F.3d at 940. Waller does not argue this case is unusual; nor could he.

The Academic Conduct Procedures attached to Waller's second amended complaint clearly vests each defendant with discretion to perform particular tasks. Doc. 37-10. Miller and Brown had discretion over whether to report suspected violations of the Student Code of Conduct and, if reported, to determine, in conjunction with the Office of Student Conduct, whether the alleged violation should be pursued and the appropriate means for addressing or adjudicating the alleged violation. *Id.* at 1. Cordew had discretion to conduct the hearing. *Id.* at 1-2, 4. As panelists, Spears, Hall, and Middlebrooks had discretion to weigh the evidence and to "deliberate and reach a decision regarding [Waller's] responsibility." *Id.* at 2. If found responsible, the panelists had discretion to "determine an appropriate sanction." *Id.* On appeal, Cordew, Blake, and McGraw had discretion to review the record and to determine the merits of the appeal. *Id*. at 3-4. McGraw specifically had discretion over whether to even take

Waller's appeal.  *Id.* at 4.  Thus, the second amended complaint makes clear that the defendants were acting within their discretionary authority.  Waller's "argument" to the contrary addresses the core qualified immunity analysis—whether the defendants' "conduct amounted to a constitutional violation" and "whether the right violated was 'clearly established' at the time of the violation."  *Lewis*, 561 F.3d at 1291.

Accordingly, the defendants are entitled to raise the shield of qualified immunity.

   *2.  Has Waller plausibly alleged his constitutional rights were violated?*

To state a procedural due process claim, a plaintiff must plead facts showing: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process."  *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *Barnes v. Zaccari*, 669 F.3d 1295 (11th Cir. 2012).  Only the third element is at issue.  Doc. 40-1 at 12.

Waller's brief sums up his due process allegations this way: "Plaintiff's failure to receive notice of any charges which occurred outside April 22, 2022, was a fundamental deprivation of his rights of notice, and an opportunity to be heard."  Doc. 44 at 14.  But the facts Waller alleges demonstrate just the opposite.  As discussed in detail above, Waller knew the incidents at issue occurred on April 21 and April 29.  *See supra* pp. 5-6.  In fact, Waller does not even allege in his second amended complaint that he did not receive notice of charges "outside April 22, 2022."  Doc. 44 at 14.  Rather, Waller simply alleges that the date in the May 10 letter was a "defect" in the notice.  Doc. 37 ¶¶ 78, 80.  Waller's hyper-technical argument that a defect in the May 10 letter somehow violated his due process rights fails for many reasons.

Even if the April 22 date initially confused Waller—he does not allege that it did, presumably because he did not work that day—Waller fails to allege how the April 22 mistake had any effect on his ability to respond to the accusations against him.  *See Jenkins v. La. State Bd. of Educ.*, 506 F.2d 992, 1000 (5th Cir. 1975) ("Although here the notice given to appellants could undoubtedly have been drafted with more precision, the charges … clearly set[] forth the type of conduct" in question).  The May 10 letter stated the facts upon which the charges were based.  Docs. 37 ¶¶ 59-61; 37-6 at 1.  For example, the letter informed Waller that Charge 2 was based on accusations that he made changes to ventilators without notifying a therapist; placed a patient on "BiPAP" without supervision; and performed an "ABG" improperly.  Doc. 37-6 at 1.  Waller correctly alleges in his second amended complaint that this incident occurred on April 29, not April 22 as stated in the May 10 letter.  Doc. 37 ¶ 76.  Moreover, Waller then met with Cordew before the hearing to review the charges, and he received evidence he requested in advance of the hearing.  Docs. 26, Ex. 6 at 13:39—14:37, 22:58—22:38; 37 ¶ 60.  Waller also received copies of emails between Miller and Houston Healthcare employees related to Houston Healthcare's investigation of the April 21 and April 29 incidents, and Waller was informed that these documents would be used as evidence against him at the hearing.  Doc. 26, Ex. 6 at 14:21—17:07.  Finally, the audio recording of the hearing establishes that the mistake in the May 10 letter was recognized and that Waller presented his defense to the charges arising from the April 21 and April 29 incidents.  *See* Docs. 26, Ex. 6; 37-7; 37-8.  In short, Waller's argument that the defect in the May 10 letter "was a fundamental deprivation of his rights of notice, and []

opportunity to be heard" is flatly contradicted by his pleadings.  *See* Docs. 26, Ex. 6; 37; 44 at 14.

Indeed, his allegations establish that he enjoyed far more than the minimally required due process.  In the school disciplinary setting, due process requires only that colleges give students notice and a hearing before suspending or expelling them.[11]  *See Nash v. Auburn Univ*., 812 F.2d 655, 660-61 (11th Cir. 1987); *Dixon v. Ala. State Bd. of Educ*., 294 F.2d 150, 158 (5th Cir. 1961) ("[D]ue process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct.").  Nevertheless, Waller, quoting *Dixon v. Alabama*, argues public colleges and universities "should . . . comply with the following standards":

> The notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion …. [This] requires something more than an informal interview with an administrative authority of the college. By its nature, a charge of misconduct [is] easily colored by the point of view of the witnesses.  [A] hearing which gives … an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved … [T]he student should be given the names of the witnesses against him and an oral or written report on the facts to which each witness testifies. He should also be given the opportunity to present … his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf.

Doc. 44 at 7 (alteration in original) (quoting *Dixon*, 294 F.2d at 158-59).

That process is what Waller got.[12]   He was given notice of the specific portions of the student code of conduct which he was charged with violating and the factual

---

[11] Waller suggests MGSU failed to adhere to its policies, but he never identifies any university requirements that he alleges were not followed.  Even if MGSU failed to follow its own procedures, however, the relevant constitutional question is "whether the process that [Waller] actually received comported with the requirements of the Due Process Clause."  *Taylor v. Bd. of Regents of Univ. Sys. of Ga*., 2022 WL 4857906, at *8 (N.D. Ga. Oct. 3, 2022) (citing *Garrett v. Mathews*, 625 F.2d 658, 660 (5th Cir. 1980)).

[12] It should not be inferred that the above quote from *Dixon* states constitutionally required procedures.  *See Dixon*, 294 F.2d at 154 ("[T]he question for decision does not concern the sufficiency of the notice or

bases for the charges.  Docs. 37 ¶ 59-62; 37 ¶ 64; 37-6 at 1.  Waller was given an opportunity to respond to those accusations at a hearing, and that hearing was held within a reasonable time after he received notice of the charges.  Docs. 26, Ex. 6 at 12:55—13:18; 37 ¶ 64; 37-6 at 1.  At the hearing, Waller was allowed to confront the evidence against him, call witnesses, speak on his own behalf, and present his own evidence.  Docs. 26, Ex. 6 at 6:58—7:12, 12:55—13:18; 37-6 at 1-2; 37-8 at 1.  Waller was thereafter able to appeal the panel decision to various school officials and the University Board of Regents.  Docs. 37 ¶¶ 83-88; 37-7.  Waller was not otherwise entitled to witness lists or copies of expected testimony because he personally attended the hearing and heard the evidence against him.[13]  *See Nash*, 812 F.2d at 662-63.

"The fundamental requirement of due process is [simply] the opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation omitted).  Nothing in the second amended complaint suggests that Waller did not receive notice and a full and fair opportunity to present his case and be heard.  *Nash*, 812 F.2d at 666.  Thus, Waller fails to allege facts sufficient to plausibly state a procedural due process claim.

   *3. Was the law "clearly established"?*

---

the adequacy of the hearing, but is whether the students had a right to any notice or hearing whatever before being expelled.").  Due process is a flexible standard that varies "according to an 'appropriate accommodation of the competing interests involved.'" *Nash*, 812 F.2d at 660 (quoting *Goss v. Lopez*, 419 U.S. 565, 579 (1975)).  The *Dixon* quote is helpful here, however, because it is a fair summary of the due process Waller received.

[13] *Cf. Nash*, 812 F.2d at 660-61 ("The due process clause is not a 'shield ... from suspensions properly imposed,' nor does it ensure that the academic disciplinary process is a 'totally accurate, unerring process'; it merely guards against the risk of unfair suspension 'if that may be done without prohibitive cost or interference with the educational process.'" (quoting *Goss*, 419 U.S. at 579-80)).

Even if Waller plausibly alleged a procedural due process violation, he has failed to demonstrate that the Board defendants' conduct violated clearly established law.[14] Waller cites a single case to show a clearly established right—*Barnes v. Zaccari*. Doc. 44 at 15. In *Barnes*, the Eleventh Circuit stated that "no tenet of constitutional law is more clearly established than the rule that a property interest in continued enrollment in a state school is an important entitlement protected by the Due Process Clause of the Fourteenth Amendment." 669 F.3d at 1305. Waller apparently believes that this general principle is enough. He is wrong. He must show that the facts are so similar that they put defendants on notice that their conduct crosses a constitutional line. All that needs to be said about *Barnes* is that the plaintiff there did not receive *any* pre-deprivation process before his expulsion. *Id.* at 1301, 1305 (explaining university president did not provide plaintiff with "prior notice of his decision or a hearing to oppose it"). Clearly, those facts are not at all similar to the facts here.

Parenthetically, Waller notes *Dixon v. Alabama*. Doc. 44 at 15. As explained above, the only thing that *Dixon* clearly establishes is that Waller's due process rights were not violated.

In sum, the defendants are entitled to qualified immunity because Waller fails to allege facts sufficient to plausibly state a due process claim. Even if he had, he has not

---

[14] A right becomes "clearly established" in three ways. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). "First, [Waller] can show that a materially similar case has already been decided," consisting of binding precedent by the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court. *Id.* Second, Waller can "show that a broader, clearly established principle should control the novel facts" of the particular case—that is, the unconstitutionality of the instant conduct must be apparent by looking to the guiding principles of the previous case, irrespective of the underlying factual situation. *Id.* Third, Waller can show that the conduct is so egregiously unconstitutional that prior case law is unnecessary. *Id.* The second and third methods are rarely successful. "[I]f a plaintiff cannot show that the law at issue was clearly established under the first (materially similar case on point) method, that usually means qualified immunity is appropriate." *King*, 961 F.3d at 1146 (citing *Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019)).

demonstrated that the defendants violated a clearly established right.  The defendants'

motion to dismiss Waller's procedural due process claims is **GRANTED**.

## C. Rehabilitation Act and Americans with Disabilities Act

In counts three and four of his second amended complaint, Waller alleges

disability discrimination against all Board defendants in violation of the RA and the ADA.

Doc. 37 ¶¶ 145-162, 163-181.  The Court considers counts three and four together.[15]

The counts, which are virtually identical, allege all defendants' "actions and omissions"

against Waller "were taken *solely* on the basis of [his] disabilities and impairments."  *Id*.

¶¶ 156, 175 (emphasis added).  Neither Count alleges specific facts identifying specific

defendants who took specific acts to intentionally discriminate against Waller.  The

Board defendants move to dismiss arguing Waller fails to state a claim under both the

RA and ADA.[16]  Doc. 40-1 at 16-20.

---

[15] The RA and ADA are virtually identical, and the analyses are often the same.  *See Silberman v. Miami Dade Transit,* 927 F.3d 1123, 1133-34 (11th Cir. 2019) (explaining cases decided under the RA are precedent for cases under the ADA, and vice-versa because they are virtually identical).  Unlike the RA, however, the ADA does not require that the discrimination be solely because of an individual's disability. *Compare* 29 U.S.C. § 794(a) *with* 42 U.S.C. § 12132.  Any difference between the statutes is not relevant here.

[16] The Board defendants dispute Waller's allegation that "Title II of the ADA is a valid abrogation of sovereign immunity as applied to discrimination claims against public universities."  Docs. 37 ¶ 165; 40-1 at 17.  They argue Eleventh Amendment immunity is abrogated "only when the challenged conduct amounts to an independent constitutional violation."  Doc. 40-1 at 17.  There are many things wrong with that argument, but it is only necessary to say that the Eleventh Circuit has already determined that Title II is a valid abrogation of sovereign immunity as applied to students' disability discrimination claims against public universities.  *See Nat'l Ass'n of the Deaf v. Fla.*, 980 F.3d 763 (11th Cir. 2020) (en banc); *Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ.*, 405 F.3d 954 (11th Cir. 2005); *R.W. v. Bd. of Regents of the Univ. Sys. of Ga.*, 114 F. Supp. 3d 1260, 1282 (N.D. Ga. 2015).

The Board also argues that Waller's official capacity claims should be dismissed as redundant.  Docs. 40-1 at 17; 45 at 8.  Waller argues that he can seek injunctive relief and that his official capacity claims are not redundant.  Doc. 44 at 17-21.  Because Waller has not stated a claim for ADA or RA relief, it is not necessary to resolve that issue.

To state a claim under either Title II of the ADA or Section 504 of the RA, a plaintiff must generally establish "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Silberman v. Miami Dade Transit,* 927 F.3d 1123, 1134 (11th Cir. 2019) (quoting *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)).  The defendants argue that Waller's RA and ADA claims fail under the third prong.  Doc. 40-1 at 18.  The Court agrees.

It is unclear what adverse action MGSU allegedly took solely or otherwise because of Waller's disabilities.  Waller does not allege that he was "removed" because of his disabilities.  Nor does Waller allege that he requested or was denied an accommodation.[17]  Although Waller alleges that the "defendants" were aware of his conditions, had "opinions" about them, and "perceived that [he] was unable to perform" because of their opinions, there are no allegations specifically connecting the defendants' alleged awareness or opinions to any specific action.  Doc. 37 ¶¶ 36, 47, 51, 53.  Instead, Waller asserts that some unspecified "complaints" by unspecified persons in some unspecified way led to his removal from Houston Healthcare which then somehow led to his removal from MGSU.[18]   Docs. 37 ¶ 54; 44 at 18.  This

---

[17] *See Booth v. City of Roswell*, 754 F. App'x 834, 837-38 (11th Cir. 2018) ("Because [plaintiff] did not allege any facts to support his allegation that he was "terminated because he was an undesirable employee because of his disability," his discrimination claim was properly dismissed because plaintiff failed to allege his disability "had anything to do with any of the incidents for which he was disciplined.").

[18] Waller may have intended these unspecified complaints to refer to the various communications, opinions, and perceptions of *some* defendants concerning Waller's alleged disabilities.  *See* Doc. 37 ¶¶ 49-54.  If this was Waller's intention, then the second amended complaint is at best a shotgun complaint because the Court cannot figure out what Waller is alleging.  "A shotgun pleading is a complaint that

conclusory allegation is not enough to plausibly state a claim for relief under the RA or ADA.

This is particularly true when Waller affirmatively alleges that his removal was a consequence of the hearing panel's findings, none of whose members, as far as the second amended complaint alleges, knew anything about Waller's alleged disabilities.[19] Doc. 37 ¶¶ 81-82.  Indeed, Waller seems to go out of his way to clear MGSU of any discriminatory animus.  *See id*. ¶¶ 34, 37-40 ("Defendants documented zero academic or conduct infractions or consequences for Plaintiff as a result of the foregoing facts from February through November 2021."); *id*. ¶ 41 ("Plaintiff achieved a record of satisfactory academic achievement and satisfactory student conduct until the alleged events of April 2022.").  And while Waller's arguments in his brief are not allegations that can cure deficiencies in his second amend complaint, even they are telling.  For instance, Waller argues, but does not plead, that "Alexis Pope made statements related

_____

violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both.*"  Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021); *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).  The Eleventh Circuit has recognized four types of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) "a complaint that is 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action'"; (3) "a complaint that does not separate 'each cause of action or claim for relief' into a different count"; and (4) "a complaint that 'assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.'" *Barmapov*, 986 F.3d at 1324-25 (alteration in original) (quoting *Weiland*, 792 F.3d at 1321-23).  What all shotgun complaints have in common "is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.  Waller's second amended complaint does just that; it fails to put each defendant on notice of his or her actions which are the basis for Waller's claim against them.  In short, there is no way to read the second amended complaint to plausibly allege Waller was removed from MGSU because of the discriminatory animus of any defendant.

[19] The Court is not suggesting that Waller cannot allege alternative theories of liability.  Rather, the Court simply observes that Waller says specifically that his "removal" was a consequence of the alleged deprivation of his due process rights, but he never gets around to alleging how his disabilities or discriminatory animus was a cause, sole or otherwise, of his removal.

to [Waller]'s disabilities which were used to eventually kick him out of school."  Doc. 44 at 20.  But Waller pled just the opposite—"Pope's opinion of [Waller] did not result in any academic or disciplinary infraction or record for [Waller]."  Doc. 37 ¶ 34.

For these reasons, the motion to dismiss Waller's claims of disability discrimination under the RA and ADA is **GRANTED**.

### IV. CONCLUSION

For the foregoing reasons, the Board defendants' motion to dismiss (Doc. 40) is **GRANTED**.  The claims against the Board, Christopher McGraw, Christopher Blake, Teri Miller, Jasmine Brown, Shanoya Cordew, Marina Spears, Victor Hall, and Morgan Middlebrooks are **DISMISSED** without prejudice, and they are hereby **DISMISSED** from this action.

**SO ORDERED**, this 26th day of March, 2024.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT